IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ROBERT L. SMITH, JR.            )
                                )
    v.                          )    NO. 3:05-0860
                                )
CAPTAIN K. BAUGH, et al.        )

TO: Honorable Todd J. Campbell, Chief District Judge

### REPORT AND RECOMMENDATION

By Order entered February 28, 2007 (Docket Entry No. 98), the trial in this prisoner civil rights action was continued to October 30, 2007, and the action was referred to the Magistrate Judge to enter a new scheduling order, for decision on all nondispositive pretrial matters, and to recommend decision on any dispositive motion.

Presently pending before the Court are the Defendants' Motion for Summary Judgment (Docket Entry No. 129) and the Plaintiff's Motion for Summary Judgment in Response to the Defendants' motion (Docket Entry No. 142). See also Docket Entry Nos. 130-137, 143-146, and 148-151.

For the reasons set out below, the Court recommends that the Defendants' motion for summary judgment be granted and that the Plaintiff's motion for summary judgment be denied.

### I. BACKGROUND

The Plaintiff is currently an inmate of the Tennessee Department of Correction ("TDOC") confined at the Whiteville Correctional Facility. He filed this action on October 27, 2005, under 42 U.S.C. § 1983 based upon events that occurred at the Charles Bass Correctional Complex ("CBCC"), a TDOC facility where he was formerly housed. The plaintiff claims that he was harassed and retaliated against by prison officials in violation of his constitutional rights because

of his work as an inmate legal advisor and because of his filing of prison grievances, complaints, and lawsuits against prison officials.

By Order entered November 2, 2005 (Docket Entry No. 8), process was issued to twelve defendants on the Plaintiff's claims: Raymond Dittmar, Angelo Gola, Kenneth Locke, George Keeling, David Brown, Russell Blanton, David Cox, Karen Baugh, William Troup, David Gillespie, Sheila Howard, and George Busbee. The Court dismissed one of the Plaintiff's claims against three of the Defendants without prejudice,[1] see Order entered September 25, 2006 (Docket Entry No. 63), and by Order entered July 16, 2007 (Docket Entry No. 128), Defendant Gola was dismissed from the action without prejudice.

Pretrial activity has occurred in the action pursuant to scheduling orders entered October 10, 2006, and March 7, 2007 (Docket Entry Nos. 64 and 100).[2]

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Defendants argue that summary judgment should be granted in their favor as a matter of law. The Defendants contend that the Plaintiff's allegation that he was transferred to another prison as a form of retaliation fails to support his claim because a prison transfer does not constitute an adverse action sufficient to support a retaliation claim. They assert that the Plaintiff's allegation that prison officials did not follow TDOC policies when processing grievances also fails to support a constitutional claim because violations of state law or policy do not rise to the level of a constitutional violation.

The Defendants further contend that, in addition to the Plaintiff's inability to prove that he suffered an adverse action, he has also not shown that he engaged in the type of activity which is

---

[1] The dismissed claim was a claim that Defendants George Busbee, William Troup, and Karen Baugh removed him or took acts to facilitate his removal from his prison job.

[2] By Order entered October 25, 2006 (Docket Entry No. 73), this case was stayed pending the ruling by the United States Supreme Court in Jones v. Bock. By Order entered February 27, 2007 (Docket Entry No. 96), the stay was lifted.

2

protected under the First Amendment. Finally, the Defendants contend that the Plaintiff's allegations do not show the personal involvement of some of the Defendants in the alleged conduct and do not show that some of the Defendants had any knowledge of the activities undertaken by the Plaintiff which he contends were protected by the First Amendment.

### III. SUMMARY JUDGMENT STANDARD

In considering a motion for summary judgment, Rule 56(c) of the Federal Rule of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor. Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979).

The Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. SEC v. Blavin, 760 F.2d 706 (6th Cir. 1985). The non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Cloverdale Equipment Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. Id. at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing

3

Case 3:05-cv-00860   Document 157   Filed 10/05/07   Page 3 of 17 PageID #: 723

versions of the dispute at trial. First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

## IV. ANALYSIS

The Plaintiff, despite being an incarcerated individual, is no stranger to litigation. During the past two decades, he has filed numerous federal civil rights lawsuits against prison officials, no less than nine of which he has pursued to the Sixth Circuit Court of Appeals. See Smith v. Craven, 61 Fed. Appx. 159, 2003 WL 1465396 (6th Cir. Mar. 19, 2003) (unpublished); Smith v. Sundquist, 33 Fed. App. 798, 2002 WL 818345 (6th Cir. Apr. 29, 2002) (unpublished); Smith v. Ottinger, 230 F.3d 1360, 2000 WL 1359632 (6th Cir. Sept. 14, 2000) (unpublished); Smith v. Campbell, 250 F.3d 1032 (6th Cir. 2001); Smith v. Whalen, 194 F.3d 1314, 1999 WL 1000837 (6th Cir. Oct. 28, 1999) (unpublished); Smith v. Starbuck, 142 F.3d 436, 1998 WL 136534 (6th Cir. Mar. 16, 1998) (unpublished); Smith v. Talley, 57 F.3d 1070, 1995 WL 351176 (6th Cir. June 9, 1995) (unpublished); Smith v. Bradley, 53 F.3d 332, 1995 WL 241996 (6th Cir. Apr. 25, 1995) (unpublished); Smith v. Young, 849 F.2d 610, 1988 WL 60731 (6th Cir. June 14, 1988) (unpublished).

The allegations in the majority of the above noted lawsuits are essentially the same as those made in the instant lawsuit -– that the Plaintiff has been retaliated against by prison officials because of his filing of lawsuits, grievances, and complaint letters, and because of his work assisting other inmates with similar matters and with the defense of prison disciplinary charges brought against them by prison officials. Smith v. Craven, supra; Smith v. Sundquist, supra; Smith v. Campbell, supra; Smith v. Whalen, supra; Smith v. Starbuck, supra; Smith v. Talley, supra. The instant case is yet another example of claims that require the Court to sort out whether the Plaintiff has been impermissibly retaliated against or whether the actions he complains about are merely a constitutionally insignificant interaction between himself and prison officials.

In making this determination, the Court must be guided by the well-accepted principle that

the management of prison facilities is best left to prison officials. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987); Turner v. Safley, 482 U.S. 78, 89 (1987); Bell v. Wolfish, 441 U.S. 520, 546-47 (1979). The daily operation of a prison facility requires constant and vigilant attention to issues of security, good order, and the discipline of an institution, and the discretion of how to deal with these and other related issues is best left to the expertise of prison officials. See Thornburgh v. Abbott, 490 U.S. 401, 404-08, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).

The obvious truism of incarceration for a convicted prisoner is that his daily life is controlled by the mandates and actions of prison officials. Although prison officials clearly do not have the unfettered discretion to take whatever action they want within a prison facility, the constitutional rights of inmates are "more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). So long as a prison regulation "is reasonably related to legitimate penological interests," it will satisfy the Constitution. Turner, 482 U.S. at 89. Absent evidence of an infringement upon a fundamental constitutional guarantee, the actions of prison officials, even if such actions are harsh, impersonal, uncaring, or seemingly unfair, are of no concern to the courts.

Running parallel to this underlying principle is the legal doctrine that a prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. See Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Among these First Amendment rights are the right of access to the courts, Lewis v. Casey, 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), and the right to pursue grievances against prison officials. Pell, 417 U.S. at 822; Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996). Further, a prisoner has a derivative right under the First Amendment to assist other inmates if such assistance is necessary to vindicate the other inmates' right of access to the courts. Thaddeus-X v. Blatter, 175 F.3d 378, 395 (6th Cir. 1999). A prisoner cannot be retaliated against based upon his exercise of his First Amendment rights. See Smith v. Campbell, 250 F.3d 1032, 1036-37 (6th Cir. 2001); Thaddeus-X, 175 F.3d at 394. This is true even if the act complained about

would not violate the Constitution absent a retaliatory motive.

In order to provide some guidance in determining whether a prisoner's allegations of retaliation rise to the level of a First Amendment claim, the Sixth Circuit Court of Appeals has set forth the following test. The Plaintiff must show that: 1) he engaged in protected conduct; 2) a sufficiently serious adverse prison action was taken against him that would deter a person of "ordinary firmness" from continuing to engage in the protected conduct; and 3) there is a causal connection between the first two elements-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. Thaddeus-X, 175 F.3d at 394.[3]

The plaintiff has the burden of proof on all three elements. Murray v. Unknown Evert, 84 Fed. Appx. 553, 556, 2003 WL 22976618 (6th Cir. Dec. 8, 2003). Thus, the Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the Defendants' alleged retaliatory conduct. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Conclusory allegations of a retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial. See Murray, supra. If the Plaintiff is able to show that his exercise of the protected right was a substantial or motivating factor in the alleged retaliatory conduct, the burden shifts to the Defendants to show that the same action would have been taken even absent the protected conduct. See Thaddeus-X, 175 F.3d at 399.

Turning to the specific allegations made by the Plaintiff, the Court finds that all of the alleged incidents of retaliatory conduct warrant dismissal. Summary judgment should be granted to all defendants and this action should be dismissed.

---

[3] The Plaintiff has not asserted a retaliation claim under the substantive due process test of "shocks the conscience," and there are no allegations in this action, which even if true, would satisfy this more demanding standard for a retaliation claim. See Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988).

6

Case 3:05-cv-00860 Document 157 Filed 10/05/07 Page 6 of 17 PageID #: 726

Transfer from the CBCC

The Plaintiff alleges that he was transferred from the CBCC because he wrote a letter, as a representative on the CBCC Inmate Council, to the TDOC Commissioner and three other high level TDOC officials on July 7, 2005, in which he asserted that the prison officials at the CBCC were not providing inmates with adequate responses to their questions. See Complaint at 7 and 15-18. The Plaintiff alleges that Defendant Locke, as the Warden at the CBCC, initiated the transfer in retaliation for this letter and for the Plaintiff's questions at the Inmate Council meetings at the CBCC. Id.

Although the Plaintiff singles out Defendant Locke as the person responsible for compelling the transfer and as the person who exhibited the retaliatory animus, he nonetheless names Defendants Keeling, Brown, and Cox as defendants to this claim because, in the Plaintiff's view, they were conspirators in the retaliatory act because they conducted the reclassification hearing which occurred prior to the Plaintiff's transfer. Id. at 17, ¶ 52.

The Plaintiff's claim of a retaliatory transfer warrants dismissal. First, with respect to Defendants Keeling, Brown, and Cox, the Plaintiff's own allegations show that their acts were merely administrative and that they had no role in initiating the transfer due to a retaliatory animus.

Furthermore, as the United States Supreme Court in Sandin v. Conner, 515 U.S. 472, 483 (1995), noted, an inmate's transfer to the general population of another prison is an ordinary incident of prison life. See also Ward v. Dyke, 58 F.3d 271(6th Cir. 1995) (prison inmates have no right to be confined at any particular prison). The Sixth Circuit has routinely found that such a transfer does not constitute an adverse action. See King v. Zamiara, 150 Fed. Appx. 485, 2005 WL 2496478 (6th Cir. Oct. 7, 2005) (unpublished); Smith v. Yarrow, 78 Fed. Appx. 529, 543, 2003 WL 22400730 (6th Cir. Oct. 20, 2003) (unpublished); Friedmann v. Corrections Corp. of Am., 11 Fed. Appx. 467, 2001 WL 467990 (6th Cir. Apr. 26, 2001) (unpublished); Goss v. Myers, 208 F.3d 213, 2000 WL 125905 (6th Cir. Jan. 28, 2000) (unpublished); Herron v. Campbell, 198 F.3d 245, 1999 WL 1045158 (6th Cir. Nov. 9, 1999) (unpublished); Mandela v. Campbell, 181 F.3d 102, 1999 WL 357825 (6th Cir. May 26, 1999) (unpublished).

It is nonetheless true that, in a limited, factually specific situation, a prison transfer may cause sufficient limiting consequences to render the transfer an adverse action. See Siggers-El v. Barlow, 412 F.3d 693 (6th Cir. 2005). However, the only adverse consequences noted in Siggers-El were those that were directly related to the inmate's ability to retain and have access to an attorney for a legal challenge to his criminal conviction. These consequences were so directly related to the inmate's access to the courts that they constituted actions that "would deter a person of ordinary firmness from engaging in protected conduct." 412 F.3d 693, 701-02 (2005). Unlike the inmate in Siggers-El, the Plaintiff's transfer did not deprive him of access to an attorney or the courts. The plaintiff has not asserted the he was deprived of prison employment that would have provided him funds needed to pay an attorney to challenge to his criminal conviction. Thus, the exception noted in Siggers-El to the general rule that a prison transfer does not constitute an adverse action is inapplicable to the Plaintiff's case.

The Plaintiff asserts that the Whiteville Correctional Facility, where he was transferred, was more restrictive and that he was without a prison job for some period of time. See Plaintiff's reply (Docket Entry No. 145) at ¶¶ 1-4. These consequences of the transfer are significantly different from those at issue in Siggers-El. To satisfy the "adverse action" requirement, a prison inmate must show more than de minimis harm. See Ingraham v. Wright, 430 U.S. 651, 674 (1977); Thaddeus-X, 175 F.3d at 396. The very nature of the prison setting requires that a prison inmate endure actions or events at the hands of prison officials which may not be agreeable to the inmate. Certainly, not all prisons are alike and the prison jobs available or awarded to an inmate may differ between prisons or even within the same prison. The Plaintiff has not set forth evidence showing that the conditions at Whiteville were such that they rose to the level of having a deterrent effect and, thus, rendering the transfer an adverse action.

Because the Plaintiff cannot show that his transfer from the CBCC constituted an adverse action under Thaddeus-X, this retaliation claim warrants dismissal. Defendants Locke, Keeling, Brown, and Cox are only named in this claim, and summary judgment should therefore be granted

8

to them.

Violations of TDOC Grievance Policy

The Plaintiff alleges that Defendant Howard routinely violated TDOC policy regarding the processing of prison grievances, refused to file grievances, ruled that some grievances were inappropriate, and allowed prison officers to see the grievances. See Complaint at 12-13, ¶¶ 16-31. The Plaintiff's allegations against Defendant Howard fail to support a claim of retaliation and summary judgment should be granted to Howard since this is the only claim made against her.

The Plaintiff has not shown that Defendant Howard's actions, even if assumed to be true, in any way resulted from her retaliatory animus that was based upon the Plaintiff's engaging in a protected activity. Indeed, the Plaintiff's complaint fails to include any such allegation against Howard. Further, the Court finds that the misfiling or incorrect handling of prison grievances is not the type of action which rises to the level of an adverse action under Thaddeus-X. There is simply nothing before the Court which supports even a plausible claim of retaliation against Defendant Howard. She appears to have been named in this lawsuit not because the Plaintiff believed that she had retaliated against him but because he did not like what she did with respect to prison grievances.

The Plaintiff contends in his response to the motion for summary judgment that Defendant Howard's actions violated due process. See Docket Entry No. 144, at 4. However, a claim under Section 1983 is not supported by allegations that TDOC policies or regulations, or even state laws, were not followed. See Black v. Parke, 4 F.3d 442, 447 (6th Cir. 1993). Procedural requirements alone do not create a substantive liberty interest, and the mere violation of such procedures is not a constitutional violation. Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996).

Disciplinary Charges

The Plaintiff alleges that he was charged with three prison disciplinary offenses which were not based upon facts but which were acts of retaliation against him. He specifically identifies the

9

following disciplinary charges:

    1) a disciplinary charge of threatening an employee issued on October 15, 2004, by Officer Gola;

    2) a disciplinary charge of refusing a direct order issued on October 15, 2004, by Officer Troup; and

    3) a disciplinary charge of out of place issued on October 20, 2004, by Officer Hiatt.[4]

See Plaintiff's Exhibits (Docket Entry No. 2) at C, D, and E.

The Plaintiff contends that these three charges were issued as part of a conspiracy against him because: 1) he is an inmate advisor who assists other inmates in the defense of prison disciplinary charges; 2) he has complained to prison officials that "officers and staff" have interfered with his duties as an inmate advisor, see Complaint at 7-8 ¶¶ 1-2; 3) he filed a grievance against Sgt. Busbee on September 22, 2004, for interfering with the Plaintiff's inmate advisor duties, see Docket Entry No. 2, at Exhibit A; and 4) he filed a "Title VI Complaint" against Defendants Baugh, Howard, and Busbee alleging that Howard had not followed policy regarding grievances and that Busbee was harassing inmate advisors.  See Docket Entry No. 2, at Exhibit B.  The Plaintiff asserts that he had never received a disciplinary report at the CBCC prior to these three charges and all of the charges against him were ultimately dismissed.

The Defendants argue that the Plaintiff's activity as an inmate advisor does not constitute protected activity under Thaddeus-X.  They maintain that the First Amendment only requires that inmates be provided with assistance so that they can protect their access to the court for matters pertaining to their civil rights or underlying criminal convictions.  Because prison disciplinary proceedings do not involve either of these matters, the Defendants argue that the Plaintiff has no derivative right which is protected under the First Amendment to provide assistance to other inmates related to prison disciplinary proceedings.

---

[4] This correct spelling of this officer's last name is unclear.  However, the Plaintiff refers to this officer as "Hiatt."  Accordingly, the Court will use this name in referring to the officer.

The Defendants seek to extend this line of reasoning by asserting that complaints about prison officials' interference with the duties of an inmate advisor, whether in the form of a grievance or a complaint, also fail to constitute protected activity. The Defendants note that an inmate's protected right to file grievances extends only to non-frivolous matters and argue that grievances about interference with inmate advisor activity are necessarily frivolous and unworthy of protection because such grievances fail to implicate constitutional issues.

The Defendants rely upon Smith v. Craven, 61 Fed. Appx. 159, 2003 WL 1465396 (6th Cir. Mar. 19, 2003) (unpublished), to support their argument. While the Sixth Circuit in Smith v. Craven did find that the plaintiff had not established that his actions as an inmate advisor constituted protected activity, the Court did so in the context of a frivolity review under 28 U.S.C. § 1915(e)(2) and did not thoroughly analyze the issue. Further, the Court in Smith v. Craven did not distinguish the published decision in Newsom v. Norris, 888 F.2d 371 (6th Cir. 1989), in which the Sixth Circuit acknowledged that an inmate's work as an inmate advisor within the TDOC system was an activity protected by the First Amendment's prohibition against retaliation. 888 F.2d at 375-77. The Court also finds that neither Smith v. Campbell, 250 F.3d. 1032 (6th Cir. 2001), nor Shaw v. Murphy, 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001), upon which the Defendants rely, support their argument. Although both of these cases reaffirm the principle that a prison inmate does not have an independent right under the First Amendment to provide legal assistance to other inmates, neither case specifically holds that providing assistance to inmates in prison disciplinary proceedings is an act which falls outside the scope of protected conduct under the First Amendment. Therefore, the Court does not agree with the Defendants that working as an inmate advisor for prison disciplinary proceedings falls outside the scope of protected activity.

The Court also does not agree that the filing of a grievance or complaint about interference with inmate advisor activity falls outside the scope of protected activity. The Defendants' definition of a "frivolous grievance" is far too expansive and they have not pointed to any case law supporting their position that the failure to raise a constitutional issue in a grievance or complaint renders the

11

grievance or complaint frivolous. The protection afforded to an inmate's filing of grievances is well-settled and has not been linked to the necessity of complaining about constitutionally significant matters. See Brown v. Crowley, 312 F.3d 782, 789 (6th Cir. 2002); Bell v. Johnson, 308 F.3d 594, 607, n.5 (6th Cir. 2002); Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996).

The Plaintiff also satisfies the second element of the Thaddeus-X test. The Defendants do not argue that disciplinary charges are not adverse actions, and the issuance of prison disciplinary sanctions against an inmate has been found to constitute an adverse action. Brown, 312 F.3d at 789.

The Court finds that summary judgment should nonetheless be granted to the six Defendants named to this claim –- Baugh, Busbee, Gillespie, Troup, Dittmar, and Blanton – because the Plaintiff fails to show evidence of a causal connection between the protected activity and the adverse action. The Court has reviewed all of the evidence that has been presented and finds that no reasonable jury could find in favor of the Plaintiff if this claim were presented at trial. In order to support the causation element of his claim, the Plaintiff must present evidence that the decision to take the adverse action was motivated at least in part by the Plaintiff's protected conduct. Thaddeus-X, 175 F.3d at 399. Such evidence is simply not before the Court. The Plaintiff's claim of retaliatory disciplinary charges is based upon speculation, conjecture, and allegations of a conspiracy that are unsupported by admissible facts.

The Court first notes that, of the three officers who actually issued the prison disciplinary charges, only Troup is before the Court as a defendant.[5] Regardless, there is no evidence before the Court that the three prison officers, Officers Gola, Troup, and Hiatt, who actually took the adverse action against the Plaintiff by filing disciplinary charges against him, exhibited any retaliatory animus toward the Plaintiff because of his protected activity. None of these three officials were the object of any of the complaints made by the Plaintiff about interference with his work as an inmate advisor and none are alleged to have been the subject of any grievance filed by the Plaintiff prior to the

---

[5] Officer Hiatt was not named as a defendant and Officer Gola has been dismissed from the action.

12

issuance of the disciplinary reports. Further, the Plaintiff has not set forth evidence of any comments made by the officers at issue showing a retaliatory animus. Comments made by other prison officials, who were not the issuers of the disciplinary charges, are not evidence of a retaliatory motive on the part of the three prison officials who issued the disciplinary charges. See Smith, 250 F.3d at 1038.

Second, it is undisputed that the disciplinary charges were based upon events that did not involve the protected activity at issue. Unlike a situation in which a disciplinary charge is directly linked to the protected activity taken by the inmate and the charged offense consists of the act of engaging in the protected activity, see Brown, 312 F.3d at 790, the disciplinary charges at issue in this case do not themselves evidence a causal link. Further, although the disciplinary charges were ultimately dismissed, the dismissal of the charges alone does not suggest that retaliation was involved.

The Plaintiff has also not presented any evidence supporting his assertion that the three officers who issued the reports were directed to do so by other defendants or prison officials. With respect to the disciplinary charge of "out of place" issued by Officer Hiatt, the Plaintiff has presented nothing to the Court supporting the assertion that Hiatt acted upon the direction of another prison officer. Indeed, the Plaintiff has not even specified who allegedly directed that the disciplinary charge be issued, what the exact directive was, when it occurred, or how a retaliatory animus was involved. The only evidence the Plaintiff has presented with respect to this charge is the hearing summary showing that the charge was dismissed because there was confusion between two prison officers, Officers Hiatt and Turley, about who issued the charge. See Docket Entry No. 2 at Exhibit E. This evidence is merely probative of why the charge was dismissed. It does not support the allegations made by the Plaintiff and fails to show causality for a retaliation claim.

The Plaintiff alleges that Defendants Blanton and Dittmar told Defendant Troup to issue the disciplinary report for refusing a direct order. See Complaint at 10, ¶ 17. In order to support a retaliation claim, the Plaintiff needs to set forth evidence, not only that Defendant Troup was directed to issue the disciplinary report by Defendants Blanton and Dittmar, but that this directive was made

13

by Blanton and Dittmar because of their desire to retaliate against the Plaintiff for his protected activities. The Plaintiff has not offered any evidence supporting either allegation and no reasonable jury could find that these two events occurred as alleged by the Plaintiff.

The Plaintiff has disputed the affidavit statements of Defendants Dittmar (Docket Entry No. 134) and Blanton (Docket Entry No. 133) that they had no knowledge of the Plaintiff's Title VI complaint, his grievance against Defendant Busbee, or his September letter to TDOC officials. However, this dispute fails to raise a genuine issue of material fact. First, the Plaintiff has offered no evidence in support of his belief that these two defendants knew about any of these protected activities. Without evidentiary support for his position, the Plaintiff's mere disagreement with the factual assertions made by the Defendants fails to raise a genuine factual issue. Second, even if these two defendants knew about these three protected activities, there is still no evidence that they directed that the disciplinary charge be issued and that they did so with a retaliatory animus.

With respect to the disciplinary charge of threatening an employee, the Plaintiff alleges that "he had heard that Sgt. Busbee had enlisted the aid of Off. Gola and that he was going to be locked up that night in retaliation for the grievance and Title VI complaint that he had filed against them." See Complaint at 12, ¶ 21. However, the Plaintiff once again offers no actual evidence to support his allegation. He does not state that he personally heard the purported conversation between Busbee and Gola. He further fails to provide any evidence of who heard this purported conversation, when it occurred, or how and why it was related to the Plaintiff.

The Court also finds it noteworthy that the Plaintiff, despite apparently believing that Defendant Busbee ordered that the disciplinary charge be issued in retaliation, failed to file a contemporary grievance about the matter and failed to raise such allegations about Busbee in the disciplinary hearing on the charge. See Docket Entry No. 2 at Exhibit C. Further, in the grievance filed nearly a year later by the Plaintiff against Gola about the incident that led to the disciplinary charge, see Docket Entry No. 2 at Exhibit L, the Plaintiff again only vaguely states that he saw Busbee "discuss[] the plan with Officer Gola" and recounts that the problems with Gola began with

14

their disagreement about noise and a pool table. Id.

Defendant Gillespie is not alleged to have taken any adverse action against the Plaintiff or to have directed that any adverse actions be taken. Defendant Gillespie's only involvement in the matters at issue appears to be that he witnessed the incidents that led to the disciplinary charge issued by Officer Gola for threatening an employee and ultimately testified to those events against the Plaintiff at the hearing. See Complaint at 9-10, ¶¶ 11-16. The Plaintiff makes no other allegations against Defendant Gillespie. Such allegations simply fail to support a claim of retaliation against Gillespie because there is no evidence that Gillespie took any adverse action against the Plaintiff as required by Thaddeus-X and there is no evidence of any retaliatory animus on the part of Gillespie.

The only remaining defendant in this action is Defendant Baugh who was the captain of the second shift in the unit where the Plaintiff was housed at the CBCC. The only allegations made against Defendant Baugh are that she ignored the Plaintiff's complaints about harassment, see Complaint at 8, ¶ 3, and that she moved the plaintiff to a smoking unit, despite knowing that he was a non-smoker. Id. at 14, ¶ 38. It is further undisputed that Defendant Baugh was the prison official responsible for placing the Plaintiff in administrative segregation upon the issuance by Officer Gola of the disciplinary charge of threatening an employee. See Affidavit of Baugh (Docket Entry No. 136).

The Plaintiff's allegations against Defendant Baugh fail to support a claim of retaliation against her. The allegation that she ignored the Plaintiff's verbal complaints about other officers simply fails to satisfy the Thaddeus-X test. There is no adverse action involved in such an allegation.

While the placement of an inmate in segregation would appear to satisfy the adverse action part of the Thaddeus-X test, the Plaintiff has not set forth any evidence linking this event to a protected activity and showing that Defendant Baugh acted with a retaliatory animus in placing him in segregation because of a protected activity. In his response to the Defendants' Statement of Undisputed Facts, the Plaintiff acknowledges that Baugh had the authority under TDOC policy to place him in segregation, but that "when a person tells you that it is because of the grievances and

15

complaint that you have filed against them then that is not according to policy." See Docket Entry No. 145 at ¶ 8. Once again, however, the Plaintiff's general statement is not evidence itself and is unsupported by any specific, factual evidence showing who made the statement, to whom it was made, or when the statement was made. Indeed, in his affidavit, the Plaintiff fails to mention that Defendant Baugh made such a statement. See Docket Entry No. 143. It is also noteworthy that the Plaintiff made no mention of such a statement in any of his grievances. See Docket Entry No. 2, Exhibit L.

With respect to the allegations concerning the Plaintiff's apparent placement in a smoking unit after his release from segregation, even if Defendant Baugh were the prison official responsible for authorizing the placement and even if the Court assumes such an act to be an adverse action under Thaddeus-X, there is again a lack of any evidence showing that such an act was the causally linked to a retaliatory animus. The Plaintiff's speculation and conjecture on this issue is simply insufficient to warrant submitting this claim to a jury.

Racial Discrimination and Violation of Due Process

The caption of the Plaintiff's complaint states that, in addition to the claims of retaliation, his complaint is brought to redress racial discrimination and a violation of due process. There are no allegations in the complaint supporting either an equal protection or a due process claim. As noted supra at n.3 and 12-13, the Plaintiff's allegations of policy violations fail to support a procedural due process claim and his allegations fail to rise to the level necessary for a substantive due process claim. Accordingly, summary judgment is also warranted on these claims.

The Plaintiff's Motion For Summary Judgment

The Plaintiff's submission in response to the Defendants' motion for summary judgment consisted of a single filing which included both a response to the Defendants' motion and a motion for summary judgment on his own behalf. As set out herein, the Court has determined that there is

16

no genuine issue of material fact which needs to be resolved at trial and that all claims in the action should be dismissed. This determination means that the Plaintiff has necessarily not shown that he is entitled to summary judgment in his favor and, to the extent that the Plaintiff seeks summary judgment, the motion should be denied.

## RECOMMENDATION

The Court respectfully RECOMMENDS that:

1) the Plaintiff's Motion for Summary Judgment (Docket Entry No. 142) be DENIED; and

2) the Defendants' Motion for Summary Judgment (Docket Entry No. 129) be GRANTED in full and this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

_____
JULIET GRIFFIN
United States Magistrate Judge